## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Rebecca Troster
4635 South Lincoln Street
Englewood, Colorado 80113

Plaintiff,

v.

WILLIAM P. BARR
In his official capacity as U.S. Attorney General
Head of the Federal Bureau of Investigation-
Agency
950 Pennsylvania Avenue, NW
Washington, DC 20530

Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT FOR SEX DISCRIMINATION, DISABILITY DISCRIMINATION, AND RETALIATION

COMES NOW, Plaintiff Rebecca Troster, by and through counsel, and brings the

following complaint against Defendant William P. Barr, in his official capacity as Attorney

General, and as head of the Federal Bureau of Investigation and states as follows.

NATURE OF ACTION

1. This case involves an accomplished woman who was sexually assaulted by an FBI

supervisor and then was retaliated against for reporting the assault to her FBI superiors and filing

a criminal complaint against a high ranking and popular instructor. This is an action under Title

VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act, 29 USC § 701, for

sex discrimination, disability discrimination, and retaliation for engaging in protected activity

when Plaintiff Rebecca Troster (hereinafter referred to as "Plaintiff") was sexually harassed,

battered, and assaulted by Federal Bureau of Investigation (FBI) Supervisory Special Agent (SSA) Charles "Chip" Dick (hereinafter referred to as "SSA Dick"), and subsequently experienced further harassment and discrimination by the FBI, including the FBI's failure to investigate and take measures to ensure Plaintiff was protected from the impact of the sexual battery and assault. Plaintiff further asserts that FBI management retaliated against her for having complained about the sexual battery, failed to provide her a reasonable accommodation for her disability that resulted from the trauma of the sexual battery, created a hostile working environment, and finally, constructively discharged her from the FBI in March 2020.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this court in that the district courts have original jurisdiction over Title VII under 28 U.S.C. § § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3) because they arise under the laws of the United States and are brought to recover damages for deprivation of civil rights and The Rehabilitation Act, 29 U.S.C. § 701 et seq.

3. Venue is proper in this judicial district under 28 U.S.C. § §1391(b)-(c) and 42 U.S.C. § 2000e5(f)(3) because the Defendant is located in this District, Plaintiff's employment records are maintained by the FBI in this judicial district, and some of the decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## ADMINISTRATIVE PROCEDURE

4. Plaintiff has exhausted her administrative remedies prior to bringing this suit because she filed timely charges of discrimination with the FBI, and 180 days have passed since the filing of the complaint and no final decision has been made by the Agency.

## EQUITABLE ESTOPPEL AND TOLLING

5.   Furthermore, any statute of limitations is tolled based on the continuing violations doctrine, equitable estoppel, and equitable tolling, due to the EEO's misleading communications to Plaintiff.

6.   Specifically, after Plaintiff filed her initial EEO complaint on January 31, 2018, for reprisal and sexual harassment, Plaintiff opted to pursue mediation and file for a formal process. On February 20, 2018, Plaintiff received notification from EEO that her request for mediation had been sent to the ADR Program Manager and on April 4, 2018, Plaintiff was notified that her EEO case had been accepted for mediation. Unfortunately, that mediation never happened. Instead, on May 18, 2018, she received a letter from the Unit Chief of EEO Services Unit which stated that her mediation was canceled and it was determined "that mediation is not the appropriate venue to address your concerns." At that point, her time to submit the formal complaint via the DOJ201A document by April 30, 2018, had lapsed (the DOJ201A must be filed within 15 days of receipt of a Right to File Notice). Because of her belief that the mediation was going to take place based on the communication she received from the EEO when it was canceled, the FBI EEO created a situation where she could no longer submit her DOJ201A. It is for these reasons that the events surrounding the first EEO complaint for battery, harassment, and reprisal are appropriate for adjudication in the present matter and the principles of equitable tolling and estoppel govern the time limitations. This also violated EEO regulations, which require that the mediation take place before a Notice of Right to file was issued.

## PARTIES

7.   Plaintiff is a female and a resident of the State of Colorado. At all times relevant, hereto, Plaintiff was an employee of the FBI.

8.  Defendant William P. Barr in his official capacity as the Attorney General of the United States of America, and as such is head of the FBI.

9.  Defendant may be served with process at 950 Pennsylvania Avenue NW Washington, DC 20530.

### FACTUAL BACKGROUND

10. Prior to joining the FBI, Plaintiff graduated from the United States Military Academy and upon graduation was commissioned in the Aviation Branch of the United States Army where she was a Blackhawk pilot.

11. In September 2014, Plaintiff began her career in the FBI as a MAPA assigned to the National Academy Unit in the Training Division in Quantico, Virginia. She served as a MAPA in the FBI until she was constructively discharged on March 13, 2020.

12. In October 2017, Plaintiff had her annual performance review where she was told that her GS-13 promotion would take effect on December 24, 2017.

13. On December 15, 2017, Plaintiff was sexually assaulted by former FBI SSA Dick at an after-hours farewell party for a National Academy colleague.

14. During the course of the evening, SSA Dick left his seat and approached the end of the table where another SSA and Plaintiff were seated. While on Plaintiff's end of the table, he flicked his tongue out of his mouth at Plaintiff while wearing what is referred to as a "concealed carry" shirt (what agents wear when they are not wearing a suit and are carrying a firearm at the waistband of their pants). SSA Dick proceeded to speak to an FBI colleague saying, "I'm going to touch her ass. Even if I have to reach through your legs, I'll touch her ass, and then she will swing at you." This was not the first time that he had made comments related to touching her "ass" to FBI male colleagues or directly to Plaintiff over the course of her employment, already

subjecting her to a hostile environment with such comments, which were already known in the office.

15. At the end of the evening, Plaintiff joined in a picture, leaning in, when she felt SSA Dick put his full body weight on her back and wrapped his arm around her chest. She moved to remove his hand from just above her breast, and she felt him immediately react by reaching under her and simulating penetrate her anal and vaginal areas with his fingers through her jeans. Almost immediately, SSA Dick simulated anal and vaginal penetration by jabbing the Plaintiff again. At that point, the Plaintiff looked over her right shoulder, where SSA Dick had put his face and he said, "where are your defensive tactics now?" Plaintiff initially stayed seated and simulated a left punch and right elbow to SSA Dick's face and then stood and simulated punch to SSA Dick's stomach with no physical contact, understanding that he was carrying a weapon and understanding that she did not want to be perceived to have assaulted a federal law enforcement officer (who had been drinking and was clearly demonstrating gross lack of self-control). After the assault, Plaintiff got her jacket to leave the restaurant. As she was leaving, SSA Dick rubbed his beard on her face as he licked her neck, face, and ear.

16. Immediately after leaving the vicinity of her assaulter, Plaintiff reported the matter to an FBI Supervisory Special Agent who was an Employee Assistance Program designee and was at the farewell gathering.

17. On December 16, 2017, Plaintiff texted her supervisor, unit chief of the National Academy Unit (NAU), Unit Chief (UC) Jeffery McCormick, to report the nature of the crime and the individual responsible.

18. On December 17, 2017, Plaintiff texted UC McCormick again from the Prince William County Police Department to let him know that she was filing a police report. On January 4, 2018, a warrant was issued and UC Dick was arrested and charged with sexual battery.

19. On December 21, 2017, after Plaintiff shared with her superior that she was sexually assaulted, she was told that she had to move to another office because there was a division in the office. Plaintiff was also told by FBI management not to go to certain parts of Quantico that SSA Dick may be at. While Plaintiff asked FBI management what would be done related to SSA Dick's compliance of the criminal protective order in place, including his weapon, management's response was for Plaintiff to stay away from the Subway restaurant and surrounding area, where SSA Dick may go eat for lunch.

20. Plaintiff was also put on a temporary assignment (TDY) as a way for the FBI to "manage" the assault she had endured.

21. On December 26, 2017, Plaintiff was told that her GS-13 promotion would need to be resubmitted due to a new process that was being implemented. When Plaintiff asked others about the new process, no one could acknowledge a new process being implemented. In January 2018, UC Jeffery McCormick informed Plaintiff that Deputy Assistant Director (DAD) Alway was afraid that Plaintiff would think the delay in her promotion "retaliation" was because she reported the sexual assault by SSA Dick.

22. In February 2018, Plaintiff's promotion was finally processed, but the delay caused her to be ineligible for another position due to lost time as a G-13.

23. Upon Plaintiff's return to work on December 19, 2018, UC McCormick coordinated with SSA E. Paul Bertrand (a trained Employee Assistance Program personnel) to refer Plaintiff to Dr. Dave Jenkins for counseling. Plaintiff was experiencing symptoms from the sexual assault

and subsequent treatment by the FBI's Training Division executive management that greatly affected her health and well-being.

24. Plaintiff saw Dr. Jenkins once in December and texted him on January 6, 2018, and requested to see him and described her symptoms. Dr. Jenkins was not available to see Plaintiff until January 16, 2018. During that visit, he told Plaintiff that he did not have time to treat her and anyone he would refer her to was north or south of the local area and would not be covered under her medical plan.

25. Because of the failures of the FBI's EAP, Plaintiff sought treatment from a local counselor who referred her to a trauma specialist where she paid tens of thousands of dollars out of pocket for medical expenses and treatment. Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD). The PTSD affected both her work and family life and is a direct result of her sexual assault and subsequent harassment by FBI Management.

26. In May 2018, in the criminal trial, where SSA Dick was charged with battery, the judge put Plaintiff on trial and not the attacker, with the judge concluding that since she had defensive training in the armed services (years ago), her failure to fight back must have meant that she welcomed the contact. Prior to that, the Commonwealth Attorney refused to charge SSA Dick with sexual battery (only battery) because they couldn't prove he received sexual gratification from the attack, only an exercise of power.

27. Within the FBI, SSA Dick was referred to OIG for an investigation as to the sexual assault. The OIG investigator assigned to the case said they could not investigate it until the end of the criminal trial. In August, three months after the trial, and at the request of the Plaintiff, the FBI inquired as to the status of the OIG investigation of SSA Dick. OIG did not follow up on the

investigation until eight months after the trial. SSA Dick had retired five months earlier as soon as he turned 50.

28. The FBI and OIG allowed SSA Dick to retire, facing no consequences for the sexual assault he committed against Plaintiff, rather allowing him to quietly leave the FBI and begin collecting his pension.

29. It is the policy and practice of the FBI and its OIG to allow senior executives accused of sexual assault to quietly retire with full benefits without prosecution.

30. At the same time, the FBI created an environment where Plaintiff was continually harassed, forced to work in a hostile environment, including alongside those who tried to protect SSA Dick and the FBI in their wrongdoings.

31. FBI UC Cory McGookin was present at the time of the assault and was under subpoena to testify for the prosecution during the subsequent criminal trial of UC Dick. During the criminal trial, McGookin acted unprofessionally by associating exclusively with the defense, closely conversing and obviously siding with the defendant in the courthouse on three separate occasions. Upon the conclusion of the trial, Plaintiff reported McGookin's unprofessional behavior to the FBI's Inspection Division. Months later, when Plaintiff finally received the transcripts, she discovered that McGookin provided untruthful testimony that in part resulted in Dick's acquittal.

32. Plaintiff filed a complaint with the FBI's Office of Inspector General (OIG) related to UC McGookin's unprofessional behavior while under subpoena to testify. However, in October 2018, Plaintiff received notice that the Inspection Division declined to open an administrative inquiry into allegations, stating that the matter would be referred to Training Division Executive Management for "appropriate action".

33. A few short weeks after receiving the letter from the Inspection Division, Training Division Executive Management emailed the Training Division about an unprecedented three-way transfer of unit chiefs. UC McGookin, the man who supported Plaintiff's attacker and whose unprofessional behavior she had complained about to Inspection Division, was named Unit Chief of the National Academy Unit, the unit that Plaintiff worked in.

34. Plaintiff spoke with UC McCormick about this switch. After management decided the Plaintiff must also leave the National Academy Unit where she had worked for four years, UC McCormick offered to have the Plaintiff move to his new unit with him. Resigned to having to leave the National Academy Unit, the Plaintiff requested to do that. After that, a series of conversations took place, and ultimately, leaders of the Training Division felt she would be "underemployed" in the unit she had requested to move to with UC McCormick. Despite having asked for her disability to be accommodated in the manner she felt was best after the Training Division Executive Management put her in the horrible position of having to work for UC McGookin, executive leaders of the Training Division continued to give her the runaround, placing her on involuntary TDY to Operational Technology Division, only to finally appoint her under UC McCormick. This only reinforced the hostile work environment and aggravated her disability.

35. To avoid the hostile work environment that she was in, Plaintiff took two voluntary Temporary Duty assignments (TDYs) in an attempt to manage the stress Plaintiff was experiencing by being around the people who had supported the man who assaulted her and being subjected to increased professional and personal scrutiny from TD management.

36. Throughout 2018 and 2019, Plaintiff applied for multiple jobs in the FBI to get out of the increasingly hostile work environment. She was never selected to interview for these positions,

despite being qualified. After a TD budget analyst was promoted into a MAPA position that Plaintiff had applied for, which would have been a lateral move for her, Plaintiff began to apply for jobs outside of the FBI. FBI Training Division Executives were aware that as a result of Plaintiff having reported the assault and the resulting hostile work environment, she was looking for employment outside of the FBI. The incidents of harassment were still occurring.

37. While continuing to look for internal jobs at the FBI, Plaintiff was questioned on her leaving the FBI, having members of the Training Division ask her to confirm that she would be leaving the FBI in June 2019. However, she never had told anyone she had plans to leave, only that her son was graduating high school and she was moving homes. She was asked on a number of occasions about her departure.

38. In March 2020, Plaintiff was constructively discharged from the FBI and accepted a position as a Program Analyst (PA) with the Veteran's Health Care Administration.

39. As a result of the discrimination and retaliation Plaintiff experienced, she has suffered and continues to suffer from trauma, anxiety, and has been diagnosed with permanent injuries including PTSD. She lost her position in the FBI and has been forced to start with a new government agency towards the end of her career.

40. Not only did a high ranking male official of the FBI use his position and power to harass, batter, and assault the Plaintiff, the FBI covered up the actions of SSA Dick, instead, allowing him to continue to work at the Training Division, not even facing an investigation as to the criminal battery charges, while Plaintiff was told to stay away from a certain area, moved around to TDYs, put under the direction of UC McGookin who testified on SSA Dick's behalf, and ultimately was forced out of the FBI.

41. The FBI, EEO, OIG, and EAP were on notice of all of the facts set forth in this

complaint. These groups, whose job it is to help and protect its employees, failed the Plaintiff by

ignoring the criminal actions of SSA Dick, instead, allowing Plaintiff to experience ongoing acts

of discrimination and retaliation as a result of speaking up about her assault.


FIRST CLAIM FOR RELIEF:
VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
SEX DISCRIMINATION

42. Plaintiff incorporates by reference the allegations of paragraphs 1-41 above.

43. The FBI intentionally discriminated against Plaintiff because of her sex.

44. This act violated Title VII of the Civil Rights Act of 1964, as amended.

45. Plaintiff has suffered and will continue to suffer compensatory and special damages as a

result of the FBI's conduct.


SECOND CLAIM FOR RELIEF:
RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

46. Plaintiff incorporates by reference the allegations of paragraphs 1-45 above.

47. The FBI retaliated against Plaintiff for reporting the sexual assault by SSA Dick and later

the hostile work environment.

48. Plaintiff has suffered and will continue to suffer compensatory and special damages as a

result of this illegal retaliation.


THIRD CLAIM FOR RELIEF:
VIOLATION OF THE REHABILITATION ACT OF 1973
(DENIAL OF REASONABLE ACCOMMODATIONS)

49. Plaintiff incorporates by reference the allegations of paragraphs 1-52 above.

50. The FBI has discriminated against Plaintiff by denying her reasonable accommodations for her disability, including job placement, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as amended.

51. Plaintiff has suffered compensatory and special damages as a result of this illegal retaliation.

<u>PRAYER FOR RELIEF</u>

52. Plaintiff seeks the following relief:

    a.  A Declaratory Judgment that the FBI has violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff because of her sex and in retaliation for reporting the sexual assault against her by an FBI SSA;

    b.  A Declaratory Judgment that the FBI has violated the Rehabilitation Act of 1973, and discriminated against Plaintiff because of her disability and that the FBI denied her reasonable accommodations for the PTSD created by the sexual harassment and discrimination;

    c.  Compensatory damages according to proof;

    d.  Damages for emotional distress, pain, and suffering in the amount of $300,000;

    e.  Attorney's fees and costs of this action;

    f.  Such further relief as the Court may deem proper;

    g.  And that this matter be TRIED BY JURY.

WHEREFORE, Plaintiff demands judgment against Defendant as set forth above.

This the 9th day of December 2020.

12

Respectfully submitted,


/s/ David J. Shaffer, Esq.
David J. Shaffer
D.C. Bar Number 413484

/s/ Kelley Brooks Simoneaux, Esq.
Kelley Brooks Simoneaux
D.C. Bar Number 187844
Admission pending in D.C. District
Court

David Shaffer Law, PLLC
5012 Aurora Drive
Kensington, Maryland 20895
Phone: 202-210-7424
David.Shaffer@davidshafferlaw.com
Kelley.Simoneaux@davidshafferlaw.com

*Attorneys for Complainant*

13

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.


This the 9th day of December 2020.


Respectfully submitted,



/s/ David J. Shaffer, Esq.
David J. Shaffer, D.C. Bar #413484

/s/ Kelley Brooks Simoneaux, Esq.
Kelley B. Simoneaux, D.C. Bar #187844

David Shaffer Law, PLLC
5012 Aurora Drive
Kensington, Maryland 20895
Phone: 202-210-7424
David.Shaffer@davidshafferlaw.com
Kelley.Simoneaux@davidshafferlaw.com